USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/20/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA TRASK-HUGGINS,

Plaintiff,

-against-

GARNET HEALTH MEDICAL CENTER – CATSKILLS ET AL.,

Defendants.

7:23 CV 3758 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Patricia Trask-Huggins ("Plaintiff" or "Mrs. Trask-Huggins") brings this action against her former employer, Garnet Health ("GH") and Garnet Health Medical Center – Catskills, Harris Campus ("GH-C"), and related parties, as well as New York Governor Kathy Hochul and Acting Commissioner of the Department of Health James McDonald (collectively, "Defendants"), alleging failure to accommodate her religious beliefs and unlawful termination under Title VII of the Civil Rights Act ("Title VII"); failure to accommodate, religious retaliation, and unlawful discriminatory practices under the New York State Human Rights Law ("NYSHRL"); and unlawful establishment of religion and violation of her right to free exercise of religion under 42 U.S.C. § 1983 ("§ 1983").[1] (Complaint, ECF No. 1.) Plaintiff, a devout Catholic, alleges that Defendants violated her rights by terminating her employment as a per diem Administrative Director of Nursing at GH-C after she refused to receive the COVID-19 vaccine in 2021 for religious reasons. Defendants moved for summary judgment on Plaintiff's Title VII and NYSHRL

[1] In her response to Defendants' pre-motion letter, Plaintiff conceded that she cannot establish a claim under § 1983 or sustain a Title VII claim against the individual Defendants. (ECF No. 51.) Accordingly, Plaintiff's § 1983 claims and Title VII claims against the sindividual Defendants are deemed dismissed.

claims and Plaintiff cross-moved for summary judgment.[2] For the reasons that follow, Defendants' motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED.

## FACTUAL BACKGROUND[3]

In 1986, Mrs. Trask-Huggins began working as a full-time Licensed Practical Nurse at GH-C, an inpatient facility. (Pl. Opp. 56.1 ¶¶ 1-2.) In approximately 2001, she became an Administrative Director of Nursing at GH-C. (*Id.*) From 2003 through the end of her employment in 2021, she was a per diem employee at GH-C and her hours would vary depending on the facility's need. (Def. 56.1 ¶¶ 4-5; PTH Dep. Tr. at 21:10-20.) Separately, from 2011 through the present, Mrs. Trask-Huggins has maintained full-time employment as a Work-Based Learning Coordinator at Orange-Ulster Boces, with a work schedule from 7:30 a.m. to 3:00 p.m., Monday through Friday. (Def. 56.1 ¶ 3.) She often worked her per diem job at GH-C after her full-time position or on weekends, holidays, and over the summer. (*Id.* ¶ 5.)

[2] The Court notes that Plaintiff failed to seek leave to file a cross-motion for summary judgment as required by this Court's Individual Rule 3(A)(ii). Plaintiff's failure to seek leave appears to have been intentional rather than an oversight. First, Plaintiff's response to Defendants' pre-motion letter did not even hint at an intention to cross-move for summary judgment. (ECF No. 51.) Second, Plaintiff's counsel twice requested Defendants' consent to additional time to oppose Defendants' motion, which Defendants provided without knowing that they were also consenting to Plaintiff's use of that additional time to prepare a cross-motion. Third, none of Plaintiff's multiple letters to the Court requesting extensions of the briefing schedule mentioned a cross-motion. (ECF Nos. 53, 54, 56.) Consequently, the briefing schedule set by the Court did not contemplate cross-motions or sur-replies. (ECF No. 57.) The Court will entertain Plaintiff's cross-motion, but reminds Plaintiff's counsel that the Court's Individual Rules are intended to be followed, particularly where, as here, the failure to do so deprives Defendants of fair notice.

[3] The Court does not address facts that are immaterial to Plaintiff's Title VII and NYSHRL claims. Because the Parties have cross-moved for summary judgment, there are four factual statements before the Court: Defendant's 56.1 Statement in Support of Summary Judgment ("Def. 56.1", ECF No. 59); Plaintiff's Response to Defendant's 56.1 Statement in Support of Summary Judgment ("Pl. 56.1 Opp.", ECF No. 66); Plaintiff's 56.1 Counter-Statement in Support of Cross-Motion for Summary Judgment ("Pl. 56.1", ECF No. 66); and Defendant's Response to Plaintiff's 56.1 Counter-Statement of Facts ("Def. 56.1 Opp.", ECF No. 63). Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a Party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

Mrs. Trask-Huggins' responsibilities as Administrative Director of Nursing included overseeing the hospital's daily operations, supervising and staffing nursing personnel, addressing patient and family concerns, managing facility operations and supplies, ensuring continuity of patient care, and ensuring that GH's vision and values were carried out at GHMC-C. (*Id.* ¶ 9.) She supervised staff by making rounds and speaking with charge nurses and nursing assistants; addressed patient and family concerns; and ensured adequate staffing by floating employees between units or contacting employees to determine their availability to work. (*Id.* ¶¶ 10–12.) She also was responsible for responding to issues requiring immediate intervention, clarifying hospital policies and procedures to staff, physicians, and visitors, and responding to all emergency codes at GH-C, including codes for fires, cardiac or respiratory arrests, suspected strokes, and violence. (*Id.* ¶¶ 13–14, 19–21.) Plaintiff's duties further included providing verbal reports to incoming nursing leadership and maintaining a daily Nursing Administration Report documenting, among other things, patient admissions, census information, patient concerns, operational supply issues, patient deaths and transfers, policy violations, and maintenance requests. (*Id.* ¶¶ 16–18.) Her work environment involved potential exposure to blood, bodily substances, infectious materials, chemical hazards, radiation, vibration, slippery surfaces, and noise. (*Id.* ¶ 15.) In 2020, she received an overall performance rating as Exceeds Expectation. (*Id.* ¶ 25.)

During the COVID-19 pandemic, Mrs. Trask-Huggins was considered an essential worker and was thus required to go to work at GH-C. (*Id.* ¶ 28.) On August 18, 2021, in response to the COVID-19 pandemic, New York's Commissioner of Health issued an "Order for Summary Action" (the "Emergency Order") pursuant to New York Public Health Law § 16. (*Id.* ¶¶ 37–38.) The Emergency Order required certain healthcare entities to ensure that specified employees were fully vaccinated against COVID-19. (*Id.* ¶ 39.) The Emergency Order initially permitted covered

entities to grant accommodations to employees for medical and religious reasons. (*Id.* ¶ 40.) On August 17, 2021, in compliance with the Emergency Order, GH-C issued a memorandum entitled "COVID-19 Vaccination Requirement" (the "August 17, 2021 Memo") to all employees. (*Id.* ¶ 41.) The Memo stated:

> Governor Cuomo has ordered that all healthcare workers in New York State, including Garnet Health, must be fully vaccinated against Covid-19 by September 27th, 2021. All employees who are not fully vaccinated by September 27th will be prohibited from working and subject to disciplinary action up and to including termination. All Medical Staff will need to be fully vaccinated or have privileges suspended. We are required to follow the Governor's order. (*Id.* ¶ 42.)

The Memo further informed employees that limited exceptions to the vaccination requirement were available for medical and religious reasons and directed employees seeking an exception to submit their requests and supporting documentation to a confidential mailbox (the "Vaccine Exception email address") or to Christopher Costello, GH-C's Director of Occupational Health and Wellness. (*Id.* ¶¶ 43–44.)

On August 18, 2021, Mrs. Trask-Huggins submitted a request for a religious exemption from GH-C's COVID-19 vaccination requirement to the Vaccine Exception email address. (*Id.* ¶ 47.) In support of her request, she submitted a signed and notarized document prepared by American Frontline Doctors. (*Id.* ¶ 48.) The document did not request an alternative accommodation. (*Id.* ¶ 50.) That same day, GH-C's email responded that, to obtain a religious exemption, Mrs. Trask-Huggins was required to provide "an official letter from [her] church signed by an officiant that clearly outlines [her] religion's stance on vaccine administration and clearly indicated that you are a member of that Religion." (*Id.* ¶ 51.) Mrs. Trask-Huggins thereafter spoke with her priest at Gate of Heaven Church about obtaining a letter in support of her request, and her priest provided her with one. (*Id.* ¶ 54.) On August 30, 2021, she provided the letter via

the Vaccine Exception email address. (*Id.* ¶ 66.) The letter from Mrs. Trask-Huggins' priest did not make an alternative accommodation request. (*Id.* ¶ 68.)

On August 19, 2021, GH-C issued another memorandum entitled "COVID-19 Vaccination Requirement" (the "August 19, 2021 Memo"). (*Id.* ¶ 55.) Like the August 17 Memo, the August 19 Memo stated that, consistent with the Emergency Order, "all Garnet Health employees and all members of the Medical Staff must get their first shot of Covid-19 vaccine by September 27th, 2021." (*Id.* ¶ 56.) On August 20, 2021, GH-C sent a follow-up letter to employees who had not yet been vaccinated, reiterating that all healthcare workers in New York State were required to receive their first dose of the COVID-19 vaccine by September 27, 2021. (*Id.* ¶¶ 58–59.)

On August 26, 2021, the New York State Department of Health replaced the Emergency Order with a new rule (the "DOH Mandate" or "Section 2.61"), adopted pursuant to New York's emergency rulemaking procedures. (*Id.* ¶ 69.) The DOH Mandate required covered entities to ensure that their personnel were fully vaccinated against COVID-19, with personnel at general hospitals required to receive their first dose by September 27, 2021, absent an exemption. (*Id.* ¶ 70.) The DOH Mandate broadly defined "personnel" to include employees, medical and nursing staff, contract staff, students, and volunteers whose activities could potentially expose other personnel, patients, or residents to COVID-19, including personnel without direct patient contact. (*Id.* ¶ 71.) "Covered entities" included hospitals and diagnostic and treatment centers, such as GH. (*Id.* ¶¶ 72, 75-76.) Unlike the Emergency Order, the DOH Mandate did not provide an exemption for personnel with religious objections to vaccination; the only permitted exemption was an accommodation for medical reasons. (*Id.* ¶¶ 73–74.)

On August 30, 2021, GH issued a memorandum entitled "Covid-19 Vaccination Requirement Update" (the "August 30, 2021 Memo"). (*Id.* ¶ 71.) The August 30, 2021 Memo

explained that "[o]n August 18th, 2021, the New York State Department of Health (DOH) issued an order that requires Covid-19 vaccinations for all Garnet Health employees. Although the initial Order as originally published allowed both medical and religious exemptions, the religious exemption has been omitted from the DOH's most recent order." (*Id.* ¶ 81.) The August 30, 2021 Memo also explained that "[a]ll employees who do not get their first shot by September 27th will be sent off duty without pay and will automatically be deemed to have resigned employment from Garnet Health giving seven days' notice." (*Id.* ¶ 83.)

Before the passing of the DOH Mandate, GH was still gathering information regarding religious exemption requests, which was previously permitted under the earlier Emergency Order. (*Id.* ¶ 84.) On September 8, 2021, after all the documentation regarding employee requests for both medical and religious exemptions to the DOH Mandate were collected though the Vaccine Exception email, a group of GH doctors and Human Resources personnel met to review each request (the "September 8, 2021 Meeting"). (*Id.* ¶ 86.) Ultimately, the group determined that Mrs. Trask-Huggins' request for a religious exemption to the DOH Mandate could not be accommodated due to her position as Administrative Director of Nursing, which required face-to-face contact with patients, family members, staff, physicians, and students. (*Id.* ¶ 92.) On September 13, 2021, GH sent a letter to Mrs. Trask-Huggins notifying her that her request for a religious exception to the DOH Mandate was denied (the "September 13, 2021 Letter"). (*Id.* ¶ 101.) The September 13, 2021 Letter stated that: "Garnet Health has received and reviewed your request for a religious exemption from New York State's Department of Health vaccination requirement. After careful consideration, Garnet Health is denying your request because it would impose an undue hardship on the organization." (*Id.* ¶ 102.) The September 13, 2021 Letter concluded that: "In regard to your religious exemption, in response to the public threat of COVID-

19 and the Delta variant, the New York State Department of Public Health is requiring that all personnel are fully vaccinated against COVID-19. The New York State vaccination Order, has eliminated all reference to the 'religious exemption'. Accordingly, we are not addressing the sincerity of your belief at this time but note that regardless of your sincerity, we cannot accommodate you for the reasons expressed above." (*Id.* ¶ 105.)

On September 15, 2021, Mrs. Trask-Huggins emailed Suzanne Lange-Ahmed, Chief Nursing Officer, resubmitting her request for a religious exemption in light of a temporary restraining order ("TRO") placed on the DOH Mandate by the United States District Court, Northern District of New York on September 14, 2021. (*Id.* ¶ 108.) The TRO was overturned by the Second Circuit in November 2021 in a decision entitled *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021). (*Id.* ¶ 109.) Mr. Costello replied to Mrs. Trask-Huggins concerning her resubmission and clarified to her that the September 13, 2021 Letter was the response to her religious exemption request, and advised her that the September 27, 2021 deadline to receive the COVID-19 vaccine imposed by the DOH Mandate was still in effect. (*Id.* ¶¶ 108-113.) On September 21, 2021, Mrs. Trask-Huggins emailed Ms. Lange-Ahmed and Mr. Costello to appeal the rejection of her request for a religious exemption to the DOH Mandate because the September 13, 2021 Letter predated her resubmission on September 15, 2021. (*Id.* ¶¶ 117-118; JAS Aff., Ex. 20.) On September 22, 2021, Christine Goodhart, the Chief Human Resources Officer, responded to Mrs. Trask-Huggins' September 15, 2021 email stating that the DOH Mandate did not require hospitals to consider religious exemption requests, and that the TRO issued only temporarily restrained the Department of Health from enforcing the DOH Mandate, not individual hospitals. (*Id.* ¶¶ 122-123; JAS Aff., Ex. 21.) Ms. Goodhart also explained that "Garnet Health did in fact consider your request for a religious exemption in compliance with all applicable Federal laws and

rules, notwithstanding the omission of this option from the DOH vaccine mandate," and there was "therefore no need to reconsider your request for a religious exemption at this time." (*Id.* ¶ 124; JAS Aff., Ex. 21.)

On September 27, 2021, a Corrective Action Record was issued to Mrs. Trask-Huggins stating that she was being placed on administrative leave without pay for failure to comply with the DOH Mandate and that if "you do not obtain the first dose of the COVID-19 Vaccine by 4:00 pm on October 4, 2021, we will adjust our records to indicate that you resigned your position." (*Id.* ¶¶ 126, 128; JAS Aff., Ex. 22.)

On October 4, 2021, GH sent Mrs. Trask-Huggins a letter notifying her that because their records indicated she had not received her first dose of the COVID-19 vaccine as required by the DOH Mandate, she was deemed to have voluntarily resigned from her position. (*Id.* ¶ 137; JAS Aff., Ex. 24.)

On December 6, 2021, Mrs. Trask-Huggins filed a Charge of Discrimination with the EEOC. (*Id.* ¶¶ 145.) On the EEOC Questionnaire, Mrs. Trask-Huggins stated that she could not complete her work remotely. (*Id.* ¶¶ 147; JAS Aff., Ex. 26). On February 9, 2023, the EEOC issued a Notice of Dismissal and Notice of Right to Sue. (*Id.* ¶¶ 148.)

**PROCEDURAL HISTORY**

Plaintiff commenced this action on May 4, 2023 by filing the Complaint. (Complaint, ECF No. 1.) Defendants filed their Answer on June 29, 2023. (ECF No. 17.) On February 29, 2024, the parties stipulated to dismissing the action against Defendants Kathy Hochul and James V. McDonald. (ECF No. 26.) Following unsuccessful mediation and discovery, Defendants moved for summary judgment pursuant to Rule 56 and Plaintiff cross-moved for partial summary judgment. (ECF Nos. 58, 65.)

Defendant filed a memorandum of law ("Def. Br.", ECF No. 60), a Rule 56.1 Statement ("Def. 56.1", ECF No. 59), an attorney Affirmation ("JAS Aff.", ECF No. 62), a Response to Plaintiff's 56.1 Counter-Statement of Facts ("Def. 56.1 Opp.", ECF No. 63), and a Reply memorandum of law ("Def. Reply", ECF No. 64). Plaintiff filed a memorandum of law in support of her motion for partial summary judgment and in opposition to Defendants' motion ("Pl. Br.", ECF No. 67), a Response to Defendants' 56.1 Statement ("Pl. 56.1 Opp.", ECF No. 66), a Declaration ("PTH Dec.", ECF No. 68), and an attorney Declaration ("RAB Dec.", ECF No. 69).

## LEGAL STANDARDS

### I. Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure 56(a), summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact, and the Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Once that burden is met, the nonmoving party must do more than raise "some metaphysical doubt as to the material facts" and instead "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted). The nonmoving party may not rely on "mere speculation or conjecture" to defeat summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9,

12 (2d Cir. 1986); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.").

Local Civil Rule 56.1 requires the movant to submit a "short and concise statement…of the material facts as to which the moving party contends there is no genuine issue to be tried" and each fact is deemed admitted unless properly controverted by a correspondingly numbered response supported by admissible evidence. Local Civ. R. 56.1(a)–(d). Nonetheless, a reviewing court "may not rely solely on the statement of undisputed facts[,] ... [i]t must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*, 373 F.3d at 244 (citing *Giannullo v. City. of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)). In deciding a motion for summary judgment, the Court must determine not whether the evidence favors one side over the other, but whether a reasonable jury could return a verdict for the nonmoving party. *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). Credibility assessments and the resolution of conflicting evidence are matters reserved for the jury and are not appropriate at the summary judgment stage. *Id.*

## DISCUSSION

### I. Title VII and NYSHRL Failure to Accommodate Claims

#### A. Applicable Law

Title VII prohibits employers from discriminating against their employees with respect to "compensation, terms, conditions, or privileges of employment" based on protected classifications, including religion. 42 U.S.C. § 2000e-2(a)(1). "Religion" is defined to include "all aspects of religious observance and practice, as well as belief," and employers must "reasonably accommodate…an employee's…religious observance or practice" unless it would cause an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). If an employer

is notified of a sincerely held religious belief, practice or observance, the employer "must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002). The Supreme Court recently clarified in *Groff v. Dejoy* that an accommodation presents an undue hardship when the "accommodation would result in substantial increased costs in relation to the conduct of [the employer's] particular business." 600 U.S. 447, 470 (2023).

The NYSHRL similarly provides that "it shall be an unlawful discriminatory practice" for an employer to discharge or discriminate against an employee "in compensation or in terms, conditions, or privileges of employment" because of the employee's "creed." N.Y. Exec. Law § 296(1)(a). Section 296(10)(a) further provides that:

> It shall be an unlawful discriminatory practice for any employer…to impose upon a person as a condition of…retaining employment…any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, …unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Exec. Law § 296(10)(a).

Given the overlapping standards, the Court will address the Title VII and NYSHRL claims together. *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (noting that the Second Circuit typically treats Title VII and NYHRL claims as "analytically identical, applying the same standard of proof to both claims"); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) (same).

**B. Application**

Plaintiff asserts failure-to-accommodate claims under both Title VII and the NYSHRL (Counts I, III, and V). These claims are based on the same allegations: that Defendants failed to

accommodate Plaintiff's sincerely held religious objection to the COVID-19 vaccine and instead placed her on unpaid leave and ultimately terminated her employment when she refused to be vaccinated.

Discrimination claims under Title VII and the NYSHRL are analyzed using the burden-shifting framework adopted in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g.*, *Tolbert* v. *Smith*, 790 F.3d 427, 434 (2d Cir. 2015). Under this framework,

> the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. If the plaintiff does so…the defendant [must] articulate some legitimate, nondiscriminatory reason for its action. If such a reason is provided, plaintiff…may still prevail by showing …that the employer's determination was in fact the result of [discrimination].

*Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks and citations omitted).

Courts treat Title VII failure-to-accommodate-religion claims in two steps: first, courts ask whether the plaintiff has stated a prima facie case of religious discrimination, and second, if so, courts determine whether the employer offered plaintiff reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship. *See Bergin v. New York State Unified Ct. Sys.*, 182 F.4th 203, 209 (2d Cir. 2026); Civil Rights Act of 1964 §§ 701, 703, 42 U.S.C.A. §§ 2000e(j), 2000e-2(a)(1). To state a prima facie case of religious discrimination in the form of a failure to accommodate, a plaintiff must show that: "[i] they held a bona fide religious belief conflicting with an employment requirement; [ii] they informed their employers of this belief; and [iii] they were disciplined for failure to comply with the conflicting employment requirement." *Handverger* v. *City of Winooski*, 605 F. App'x 68, 70 (2d Cir. 2015) (summary order) (quoting *Knight* v. *Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)). The "discipline" aspect

of the third prong "has been equated with the requirement of an adverse employment action." *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 695 (S.D.N.Y. 2011).

Notwithstanding the voluminous record, this action is relatively straightforward in light of the extensive body of case law addressing materially similar claims. Here, Plaintiff has established a prima facie case of religious discrimination based on failure to accommodate. First, Plaintiff has demonstrated a bona fide religious belief that conflicted with GH's vaccination requirement. Plaintiff, a devout Catholic, submitted a request for a religious exemption from the COVID-19 vaccination requirement and supported that request with a signed and notarized document and, later, a letter from her priest. (Def. 56.1 ¶¶ 47–48, 54, 66; JAS Aff., Exs. 10, 11, 15.) Nothing in the record creates an issue of fact concerning the sincerity of Plaintiff's religious beliefs. Second, Plaintiff informed GH of her religious belief and the conflict it presented with the vaccination requirement. She submitted her religious exemption request to GH's designated Vaccine Exception email address on August 18, 2021, and subsequently provided the requested letter from her priest. (*Id.*) Thus, Plaintiff plainly notified GH that her religious beliefs prevented her from complying with the vaccination requirement. Third, Plaintiff suffered an adverse employment action for failing to comply with the vaccination requirement. After GH denied her religious-exemption request, Plaintiff was placed on unpaid administrative leave on September 27, 2021, for failing to comply with the DOH Mandate. (*Id.* ¶¶ 126, 128.) GH subsequently deemed Plaintiff to have voluntarily resigned when she did not receive her first dose of the COVID-19 vaccine by October 4, 2021. (*Id.* ¶ 137.) Accordingly, Plaintiff has established all three elements of a prima facie failure-to-accommodate claim: she held a bona fide religious belief that conflicted with an employment requirement, informed GH of that conflict, and suffered an adverse employment action for failing to comply with the requirement. *See Algarin v. NYC Health + Hosps. Corp.*, 678

F. Supp. 3d 497, 509 (S.D.N.Y. 2023), *aff'd sub nom. Algarin v. New York City Health & Hosps. Corp.*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) ("Allegations of termination of employment for failure to comply with the conflicting employment requirement of mandatory vaccination are sufficient to plead the final element of the *prima facie* case of religious discrimination for failure to accommodate."); *Zelnick v. Fashion Inst. Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (termination qualifies as adverse employment actions for purposes of Title VII claims); *see also Corrales v. Montefiore Med. Ctr.*, No. 22-cv-3219 (LAP), 2023 WL 2711415, at *5-6 (S.D.N.Y. Mar. 30, 2023) (finding prima facie case for failure to accommodate religious discrimination claim where plaintiff alleged that she had a bona fide religious belief that conflicted with the COVID-19 vaccination requirement, informed her healthcare employer of it, and her employment was terminated).

Next, the Court considers whether Defendants could have provided Plaintiff a reasonable accommodation, the crux of the parties' arguments. First, as a general matter, throughout her many communications with the Vaccine Exception email, Mr. Costello, Ms. Goodhart, and Ms. Lange-Ahmed, Mrs. Trask-Huggins requested only a blanket exemption to the DOH Mandate, not an accommodation. (Def. 56.1, ¶¶ 49, 68, 133, 135: JAS Aff., Exs. 10, 15; PTH Dep. at 131:13-19; Goodhart Dep. at 56:25-57:12; Batulis Dep. at 202:19-24, 231:22-232:2.) The DOH Mandate does not contain a general religious exemption. *See We The Patriots, USA*, 17 F.4th at 282. Plaintiff does not dispute that GH is a covered healthcare entity for purposes of the DOH Mandate. And while Plaintiff attempts to convey that a substantial portion of her work was performed "alone" and "separated from other personnel," it is indisputable that Plaintiff qualifies as "personnel" for purposes of the DOH Mandate, given that she worked on site at GH-C with co-workers. (Def. 56.1 ¶ 71; Compl. ¶ 28-31; DOH Mandate, 10 N.Y.C.R.R. § 2.61(a)(2) (personnel defined as those who

"engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease"). *See also Corrales*, 2023 WL 2711415, at *2, *6 ("receptionist in executive offices" of the hospital who "did not interact with hospital patients" covered by Section 2.61); *Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 78 (N.D.N.Y. 2022) (security officers who worked at hospitals covered by Section 2.61). Plaintiff also did not allege that she qualifies for a medical exemption. Therefore, and as courts have repeatedly held, exempting Plaintiff from the mandatory vaccination requirements of Section 2.61 would violate the state rule, which would necessarily create an undue hardship. *See Bey v. City of New York*, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding federal regulations"); *see also, e.g., Shahid-Ikhlas v. N.Y. Presbyterian Hosp., Inc.*, 2023 WL 3628151 (GHW) (SDA), at *5 (S.D.N.Y. May 24, 2023) ("It is well established that Defendant would suffer an undue hardship as a matter of law if it was required to accommodate Plaintiff by exempting Plaintiff from the vaccine requirement, while allowing her to perform work that would require her to be vaccinated under the Mandate, because such accommodation would require Defendant to violate the law.") (recommendation adopted by *Shahid-Ikhlas v. N.Y. Presbyterian Hosp., Inc.*, No. 22-CV-10643 (GHW)(SDA), 2023 WL 3626435, at *1 (S.D.N.Y. May 24, 2023)); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-cv-2929 (CS), 2023 WL 3467143, at *5-6 (S.D.N.Y. May 15, 2023) (dismissing Title VII claim because defendants would be violating the state mandate by providing religious exemption, "thus suffering an undue hardship"); *Riley v. N.Y.C. Health and Hosps. Corp.*, No. 22-cv-2736 (JGK), 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (dismissing Title VII claim seeking religious exemption from mandatory COVID vaccination policy because "Title VII cannot be used to require employers to break the

law"); *Does 1-2 v. Hochul*, 632 F.Supp.3d 120, 144–45 (E.D.N.Y. 2022) (religious exemption to mandatory vaccination policy would impose undue hardship as a matter of law where it would require defendant to violate Section 2.61).

Blanket exemptions aside, the Second Circuit has held that religious accommodations are possible under Section 2.61 if the employer accommodates "employees with religious objections by employing them in a manner that removes them from the Rule's definition of 'personnel.'" *We The Patriots*, 17 F.4th at 370. Here, any accommodation would not have removed Mrs. Trask-Huggins from the scope of Section 2.61 because her responsibilities entailed working on site at GH-C with co-workers; therefore, she would be "engag[ing] in activities such that if [she was] infected with COVID-19, [she] could potentially expose other covered personnel…to the disease." (DOH Mandate, 10 N.Y.C.R.R. § 2.61(a)(2).) In her Opposition, Plaintiff asserts that "her exemption request itself was a form of accommodation that she was asking." (Pl. Opp. at 7.) However, as explained *supra*, exempting Plaintiff from the vaccine requirement would have imposed an undue hardship on GH-C because it would have forced GH-C to violate state law. Plaintiff further asserts that she could have worked remotely or been granted an indefinite leave of absence as an accommodation. (*Id.* at 2.) However, documentary evidence, Mrs. Trask-Huggins' testimony, and her own communications to the EEOC confirm that she could not perform her work remotely given her responsibilities at GH-C. (JAS Aff., Exs. 5, 7, 16.) In fact, in a questionnaire completed by Mrs. Trask-Huggins and submitted to the EEOC, Mrs. Trask-Huggins wrote "no" in response to the question "Could your work be completed remotely?" (JAS Aff., Ex. 26). Through a self-serving affidavit, Mrs. Trask-Huggins attempts to create an issue of fact by minimizing her job duties and alleging that she could have completed her duties remotely, contradicting her sworn testimony and her responses to the EEOC Questionnaire when, in reality, she was an in-person

employee that could not fulfill her responsibilities remotely. (*Id.*; PTH Dec. ¶¶ 7-16; Def. 56. ¶¶ 9-21 (citing to PTH Dep.)) Mrs. Trask-Huggins' claim that she could have been placed on an indefinite leave of absence is similarly futile. At the time of the DOH Mandate, there was no indication when the vaccination requirement would be lifted. Thus, Mrs. Trask-Huggins' proposed accommodation would have required GH to place her on indefinite leave, which is not a reasonable accommodation as a matter of law. *See, e.g., Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover").

Finally, contrary to Mrs. Trask-Huggins' contention, Defendants did consider whether a reasonable accommodation could be made. In preparation for the September 8, 2021 meeting, Mrs. Goodhart compiled the employees' exemption requests on a spreadsheet that identified, among other things, each employee's position, whether the employee was patient-facing or worked in a back-office or remote position, whether the employee had submitted supporting documentation, the source of that documentation, and the reason for the exemption request. (Def. 56.1 ¶¶ 85, 87; JAS Aff., Ex. 32.) Mrs. Goodhart, who attended the September 8, 2021 meeting, further testified that GH reviewed each request for a religious exemption individually and considered the employee's specific position—including whether the position was patient-facing, remote, or back-office—to determine whether an accommodation could be made. (Def. 56.1 ¶¶ 90–92.) The September 13, 2021 Letter also explicitly confirms that GH considered whether a reasonable accommodation was possible. (JAS Aff., Ex. 17.)

Accordingly, because granting Plaintiff a religious exemption from or otherwise accommodating her religious objection to the DOH Mandate would have imposed an undue

hardship on Defendants, Plaintiff's failure-to-accommodate claims under Title VII and the NYSHRL are dismissed. Defendants are therefore entitled to summary judgment on these claims, and Plaintiff's motion for summary judgment is denied.

## II. Title VII and NYSHRL Religious Discrimination Claims

The parties also moved for summary judgment on Plaintiff's intentional discrimination claims, specifically intentional religious discrimination and unlawful discriminatory practices under Title VII (Counts II and V), and retaliatory discrimination (Counts IV). The Court addresses each in turn.

### A. Intentional Religious Discrimination Under Title VII and NYSHRL

Employment discrimination claims under Title VII are analyzed under the *McDonnell Douglas* burden shifting framework. Under Title VII, it is "unlawful for employers to discharge or otherwise to discriminate against any individual in his or her employment because of such individual's religion." *We The Patriots I*, 17 F.4th at 291 (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff adequately pleads a Title VII claim for employment discrimination on the basis of religion by alleging: (1) that she "is a member of a protected class," (2) that she "was qualified" for her position, (3) that she "suffered an adverse employment action," and (4) facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023). An employee can also bring a Title VII religious discrimination claim by demonstrating that an employment practice caused a disparate impact on the basis of religion. 42 U.S.C. § 2000e-2(k)(1); *see also Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020). In order to successfully plead a disparate impact religious discrimination claim, a plaintiff must allege facts that "(1) identify a specific employment practice or policy; (2)

demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Mandala*, 975 F.3d at 207.

Here, Plaintiff fails to satisfy either standard. First, by refusing to receive the COVID-19 vaccine, Mrs. Trask-Huggins became unqualified for her position. To be qualified for a position under Title VII, an employee must satisfy "the criteria the employer has specified for the position." *Scé v. City of New York*, No. 20-3954, 2022 WL 598974, at *1 (2d Cir. Mar. 1, 2022) (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004), *abrogated on other grounds in Muldrow v. City of St. Louis*, 601 U.S. 346, 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024)); *Martin v. City Univ. of New York*, No. 17-cv-6791, 2018 WL 6510805, at *8 (S.D.N.Y. Dec. 11, 2018) (to be qualified, "an employee must not only be capable of performing the work; she must also satisfy the employer's conditions of employment") (citing *Moore v. City of New York*, No. 16-cv-7358, 2018 WL 1281809, at *4 (S.D.N.Y. Mar. 8, 2018), *aff'd*, 745 F. App'x 407 (2d Cir. 2018)). The Second Circuit has recognized that "[v]accination is a condition of employment in the healthcare field." *We The Patriots I*, 17 F.4th at 294; *see also Kane v. de Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) (collecting cases). Consistent with that principle, district courts in this Circuit have held that an employee subject to a COVID-19 vaccination requirement who failed to comply with that requirement was not qualified for her position for purposes of a Title VII employment discrimination claim. *See, e.g.*, *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 319 n.15 (E.D.N.Y. 2024); *Lake v. HealthAlliance Hosp. Broadway Campus*, 738 F. Supp. 3d 208, 218 n.13 (N.D.N.Y. 2024); *Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023), *appeal dismissed*, No. 23-7984 (2d Cir. May 9, 2024). Accordingly, when Defendants' vaccination requirement took effect on September 27, 2021, Mrs. Trask-Huggins was

not qualified for her position as a per diem Administrative Director of Nursing at GH-C. The Court therefore need not reach the remaining elements of Plaintiff's discrimination claims.

Plaintiff likewise fails to raise a genuine dispute of material fact regarding Defendants' enforcement of the DOH Mandate. The DOH Mandate applied to all covered entities and personnel and was enforced without regard to employees' religious beliefs. Nothing in the record suggests that Defendants enforced the Mandate selectively against religious personnel or Catholics specifically. Rather, the record establishes that Mrs. Trask-Huggins was terminated because she refused to receive the COVID-19 vaccine as required by state law. Indeed, she was not the only employee who sought a religious exemption from the DOH Mandate or who was separated for noncompliance. Her request for a religious exemption was one of 110 such requests. (Def. 56.1 ¶ 89.)

Accordingly, Plaintiff's religious discrimination claims under Title VII and the NYSHRL are dismissed. *See Lenzi*, 944 F.3d at 107 n.7 (noting that the Second Circuit typically treats Title VII and NYHRL claims as "analytically identical, applying the same standard of proof to both claims"). Defendants are granted summary judgment on these claims, and Plaintiff's motion for summary judgment on those claims is denied.

**B. Retaliation Claim Under NYSHRL**

Courts analyze claims for retaliation pursuant to NYSHRL under the familiar framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*[.]"). To establish a prima facie case of retaliation, the plaintiff must show that: "(1) [s]he was engaged in an activity protected under [NYSHRL]; (2) [her] employer was

aware of [her] participation in the protected activity; (3) the employer took adverse action against [her]; and (4) a causal connection existed between the protected activity and the adverse action." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 571 (S.D.N.Y. 2023).

Mrs. Trask-Huggins asserts that her "firing occurred under circumstances giving rise to an inference of discrimination." (Pl. Opp. at 14.) However, as discussed *supra*, the record is clear that Mrs. Trask-Huggins was terminated because she refused to take the COVID-19 vaccine as mandated by state law, not because of her religious beliefs or because she is Catholic. Mrs. Trask-Huggins apparently contends that she was fired because she sought a religious exemption or accommodation, this district has long made clear that under the NYSHRL, a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim. *See, e.g., Marshall v. Westchester Med. Ctr. Health Network*, No. 22-CV-7990, 2024 WL 665200, at *14 (S.D.N.Y. Feb. 16, 2024) ("'[A] request for reasonable accommodation is not a protected activity for purposes of a retaliation claim' under the NYSHRL." (quoting *Mejia v. City of New York*, No. 17-CV-2696, 2020 WL 2837008, at *13 (E.D.N.Y. May 30, 2020)); *Taulbee v. D'Youville Coll.*, No. 21-CV-228, 2022 WL 363338, at *2 (W.D.N.Y. Jan. 11, 2022) (noting that "New York law does not recognize" NYSHRL retaliation claims based on a request for a reasonable accommodation); *Dipinto v. Westchester County*, No. 18-CV-793, 2020 WL 6135902, at *7 (S.D.N.Y. Oct. 19, 2020) (explaining that "requesting a reasonable accommodation [does not] constitute [a] protected activit[y] under the NYSHRL[,]" and collecting cases). Accordingly, because Mrs. Trask-Huggins has failed to identify any protected activity that could support her retaliation claim, she has failed to raise a genuine issue of material fact as to whether Defendants retaliated against her in violation of the NYSHRL. Defendants are therefore entitled to summary judgment on this claim, and Plaintiff's motion for summary judgment on the same is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in its entirety and Plaintiff's cross-motion for partial summary judgment is DENIED. The Court respectfully directs the Clerk of Court to enter judgment in favor of Defendants and to terminate the motions at ECF Nos. 58 and 65 and this action.

SO ORDERED.

Dated: August 20, 2026
White Plains, New York

Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.